PETER W. BALLINGALL, Plaintiff. in Error, *v.* WILLIAM H. BRADLEY, administrator, etc., *et al.*, Defendants in Error.

#### ERROR TO ROCK ISLAND.

To take a case out of the statute of frauds, there must be, or must have been, some written evidence of an agreement between the parties.

AT the April special term, 1848, of the Circuit Court of Jo Daviess county, complainant filed his bill for relief, averring that on the 11th of January, 1837, complainant executed a mortgage to Hezekiah H. Gear, on lot No. 36, on west side of Main street, in Galena, to secure payment of the sum mentioned in mortgage. Afterwards Gear commenced an action on the mortgage, and decree of foreclosure for $336.40 was rendered at the October term, 1840.

Afterwards complainant took the case to the Supreme Court on writ of error, and at the December term, 1842, the decree of Circuit Court was reversed, and mortgage remained unforeclosed.

At July term, 1837, of said Circuit Court, Crow and Tevis recovered a judgment against complainant for $216.23, and on the 4th of November, 1840, a writ of *venditioni exponas* issued on the last judgment, and a special execution on the first judgment, dated the same day, both directed to sheriff of said county, and upon both of which the sheriff, on the 26th of January, 1841, sold the above property, as complainant, to Scheimer and Duncan for $2,010, in full payment of the judgments, interest and costs. On the 23d of May, 1842, sheriff made deed to purchaser Duncan, which recites that Scheimer assigned his interest in certificate of purchase to Duncan. October 21, 1837, complainant executed another mortgage on same property to said Scheimer for sum mentioned in mortgage, upon which judgment of foreclosure was entered at June term, 1841, against complainant for $2,134, in favor of Scheimer, upon which a special execution issued February 1, 1842, and the property sold thereon February 26, 1842, to Scheimer and Duncan for $2,296, in full satisfaction.

That on the 23rd of May, 1843, sheriff executed deed to Duncan.

After the first sale, and before June term of Circuit Court, 1841, while Duncan and Scheimer were jointly interested in the property under the first purchase, Scheimer wishing to recover judgment in time to redeem from first sale as judgment creditor, and fearing a delay if complainant appeared to defend, agreed that if complainant would confess judgment for amount claimed in mortgage, and permit him to redeem as such judgment creditor, from the first sale, he would so redeem and save the property for complainant, after satisfying his indebtedness, interest and costs, assuring complainant that he only wished security for his debt, and after such satisfaction complainant might have the property. Complainant therefore allowed judgment to be rendered against him at June term, 1841, for $2,134, amount in mortgage.

Complainant relying on the said promise of Scheimer, did not redeem the property from the first sale, which he would have done had it not been for the promise of Scheimer, the property exceeding in value four or five times the amount of the first sale. Complainant, in pursuance of the agreement, paid over to Scheimer $105, surplus bid on first sale, and Kelly and Mason agreeing to pay to complainant, or order, $1,200 in 1841. Complainant transferred the claim to Scheimer, and he accepted it without recourse, as part payment of his indebtedness. In con-

sequence of the agreement with Scheimer, complainant took no further notice of the judgment against him in favor of Scheimer, and had no knowledge of the issuing of execution, sale and execution of sheriff's deed by virtue of said judgment, until after the date of the deed, which was owing to his reliance upon the agreement of Scheimer. And had he known of the second sale, and that the purchasers intended to retain the property for their benefit, he would have redeemed from both sales, the value of the property being double the amount of both sales and interest.

That Duncan, before either of the sheriff's deeds was made to him, and before the purchase by, or assignment to, him of any interest in the property by Scheimer, had notice of the agreement of Scheimer and complainant's reliance thereon.

That the agreement between Scheimer and complainant was made with the privity and concurrence of Duncan, and he purchased at first sale for the benefit of Scheimer.

That since January 26, 1842, up to this time, Duncan and his representatives have continued in possession of the property, and received the rents and profits thereof.

The rents and profits were then, and are now, worth $1,400 or $1,500 yearly, out of which complainant could have paid all the indebtedness had he continued in possession.

At the time of sale, the property was worth $10,000, and it was capable of being conveniently divided into two parts, either of which would have sold for sufficient to satisfy the executions, interest and costs.

That Duncan and Scheimer induced persons to stay away from the sale and refrain from bidding, which caused it to sell for less than it otherwise would.

These facts prevented complainant from paying the indebtedness. There has been no material alteration in the property since Duncan took possession. That he took possession to repay himself from the rents and profits, which has been done.

That the said Duncan and his representatives have received about $6,000 more than the purchase moneys paid by him and Scheimer, and all interest thereon, from the rents and profits, no part thereof having been received by complainant since January 26, 1842, which have now amounted to $10,000. That Duncan having no interest in the property, except under the sheriff's deed, on the 8th of December, 1842, made his will, devising all his real estate to his wife, now married to Brownell, and to his children, Sylvester F. and Edward C., Catharine Wirrell, married to Edward E. Sanders, Ann Duncan, married to Adam Tilford, Susan, now married to John Barton, Sarah J., now married to Samuel Gilbert, and Virginia, and made Schei-

mer and Daniel A. Barrows executors. Duncan died in August, 1843, without revoking the will, the children now surviving. After Duncan's death, widow had daughter Mary Duncan, and the children have no interest in the property except such as derived through Duncan. That Scheimer and Barrows relinquished executorship, and William H. Bradley was duly appointed and acted as administrator. Complainant, being remediless at law, prays that defendants may answer without oath, and an account to be taken, and if the rents and profits amount to the said purchase money and interest, the defendants, except Scheimer, Barrows and Bradley, be decreed to convey the property in fee simple to complainant. And if the rents and profits should fall short, then the same decree shall be made upon payment of the deficiency by plaintiff. Prays that subpoena may issue to the above named persons as defendants.

Bradley, administrator, etc., Barrows, Scheimer, Brownell and wife, Sanders and wife, Tilford and wife, Barton and wife, and Gilbert and wife, filed their joint and several answer, setting forth, after reservation, that they are informed and believe, that on the 11th of January, 1837, complainant executed to Gear a mortgage on the lot, as set forth in complainant's bill, and that complainant was seized thereof in fee simple. That at the October term, 1840, of the Circuit Court of Jo Daviess county, a judgment of foreclosure was rendered against complainant for $336.40. They are also informed and believe that Crow and Tevis, at July term of said court, 1837, recovered judgment against complainant for $1,216.23. That they are informed and believe that a writ of *venditioni exponas* issued on last judgment, on the 4th of November, 1840, and at the same time a special writ of *fi. fa.* issued upon the first judgment. That, by virtue of the said writs, the sheriff, on the 26th of January, 1841, sold the property mentioned in the complainant's bill, to Scheimer and Duncan, for $2,010 and judgments, interest and costs fully satisfied, and overplus of $105.77 paid to complainant. That sheriff executed certificate of purchase to Duncan and Scheimer, and Scheimer assigned his interest to Duncan. That on the 23d of May, 1842, sheriff executed deed to Duncan, as set forth in bill. That on writ of error, the Supreme Court, at December term, 1842, reversed the first judgment and remanded the cause, but no further proceedings were had thereon. That Duncan and Scheimer were not connected with Gear in that suit, and were *bona fide* purchasers for valuable consideration. Admit execution by complainant of the second mortgage and judgment thereon, as stated in complainant's bill, upon which judgment a special writ of *fi. fa.* issued February 1st, 1842, and the property was sold as stated in bill. That certificate of pur-

chase was given to Duncan and Scheimer, and Scheimer resigned his interest to Duncan. That on the 23rd of May, 1843, the sheriff executed a deed of the property to Duncan, as stated in bill. That defendants deny that Scheimer, for the reasons set forth in bill, or for any other reason, agreed with complainant that if he would allow judgment to be rendered against him for amount due on the last mortgage in time for Scheimer to redeem from the first sale, that he would so redeem for his benefit, after satisfying his indebtedness, and that Scheimer assured him all he wanted was security for this debt due him, and after satisfaction of the amount due him from the rents and profits, complainant might have the property, as set forth in the bill of complaint. Defendants deny that Scheimer ever made any agreement with him concerning said mortgage, judgment, redemption, property, or rents and profits, except as hereinafter stated. Defendants deny that complainant relied upon such supposed promises, and thereby permitted judgment, at the June term, 1851, to be rendered against him in favor of Scheimer, as set forth in bill, and did not redeem from the first sale by reason of such agreement. Deny that Scheimer received $105, or any other sum, in pursuance of such promise. Defendants deny that Scheimer received a claim of $1,200 against Kelly and Moran in 1841, in pursuance of any such arrangement, as stated in bill of complaint. And also deny that complainant, relying upon any such promise, did nothing in regard to the judgments and property, as set forth, and that complainant believed Scheimer and Duncan purchased for his benefit. They aver that the proceedings were open and legal, and that complainant's ignorance thereof did not arise from any promise of Scheimer. They deny that complainant could have redeemed, or procured to be redeemed, the property, and that it was worth double the amount of both sales, but aver that the property sold for its full value. They deny that Duncan had any notice or privity of agreement by Scheimer to complainant, or that such agreement existed. Also deny that Duncan, at first sale, purchased for the benefit of Scheimer, as stated by complainant, but aver that Duncan wished to become owner of the property, and that Scheimer purchased with the design of collecting amount due him and assigning his interest therein to Duncan. They deny the value of the property, as alleged by bill, but aver that it sold for a fair and reasonable sum. Also deny that the property could have been divided as stated, and aver that it would not have sold as well in portions as in a body. They deny the fraud practised by Duncan or Scheimer, to induce persons to stay away from sale, or refrain from bidding, or to diminish competition, as charged by bill. Defendants allege that Scheimer applied to complain-

ant to get him to sign a power of attorney, to confess judgment in suit of Scheimer against him for foreclosure, in order to avoid cost, which complainant refused to do, but he made no defense to the suit, and judgment was recovered without this assent or assistance. That after judgment complainant proposed to pay Scheimer $100 per month until the amount due him was paid, to which Scheimer assented, and promised upon full payment thereof to release complainant the property. That complainant paid only $100 in pursuance of such agreement, and that Scheimer on the 18th of June, 1845, repaid him the $100 and took receipt in full of all demands. This was the only agreement made by Duncan or Scheimer to complainant concerning the property, judgments, redemption or rents and profits, and they charge that the statements by complainant in relation thereto are false. They also state that after execution of sheriff's deeds to Duncan, he offered complainant the property upon payment of his money, interest and costs, which offer complainant did not accept. Defendants further state that the supposed promise or agreement of Scheimer or Duncan, as set forth in bill, was not in writing, and therefore it was void under the statute of Illinois, upon which defendants insist. Also deny complainant's claim to a reconveyance, but aver that Duncan took possession, as before stated, in his own right in fee simple.

The decree in this case was rendered by WILKINSON, Judge, at May term, 1852, of the Rock Island Circuit Court, the case having been taken to that county by change of venue.

MANNING and MERRIMAN, and M. Y. JOHNSON for Plaintiff in Error.

N. H. PURPLE and HIGGINS, BECKWITH and STROTHER, for Defendants in Error.

CATON, J. There is an apparent conflict in the testimony upon some points in this case, and especially as to the question whether any agreement was ever made between Scheimer and the complainant, that the former should redeem the property sold upon the first decree, and the venditioni exponas for the use and benefit of the latter. Several witnesses testify that both Scheimer and Duncan repeatedly stated that such an agreement had been made. This is positively denied by Scheimer, in his deposition, and the testimony of Smith is to the same point, and nearly as satisfactory, for he states circumstances which lead strongly to the conclusion that he would have known it, had there been such an agreement. There is no doubt that negotiations were had between the parties with a view to such agreement, but it is, to

say the least, exceedingly doubtful whether they ever terminated in an actual agreement or understanding on the subject. It is highly probable also that Scheimer did entertain the intention of allowing the complainant to take back the property, should he be paid the amount of his debt, and the strong probability is, that the expression of such intention was understood by the witnesses as the admission of the existence of an agreement to that effect. It is the liability to such mistakes and misunderstandings, which renders it necessary and proper for courts to receive with great caution testimony of oral declarations for the purpose of establishing a contract.

Hence, too, the enactment of the statute of frauds. The subsequent conduct of the complainant, to the tenants in possession of the premises, is utterly inconsistent with his understanding of the existence of such an agreement as he now alleges.

But admitting that there was a parol agreement of the character alleged, it is very clear that it was never evidenced by any writing signed by the party to be charged. For the purpose of making out written evidence of the agreement, reliance is had upon a supposed letter written by Scheimer to the complainant, while he was absent in Scotland, and which letter is said to have been lost. Stevens testifies that after the complainant's return, he showed him such a letter, which was in English and in Scheimer's hand writing, with which he was acquainted. Stevens testifies that in that letter, Scheimer, after urging the complainant to send him money to enable him to redeem the property, stated in substance as follows: " for you know that under our agreement I am to save the property for you for your benefit." As to this letter, it is very clear that Stevens was mistaken in his recollection. The evidence satisfactorily establishes that Scheimer always conducted his correspondence in French, and that he never wrote a letter in English in his life, and that whenever it was necessary for him to correspond in English, he got another to write for him. The witness Smith states that he was on the most intimate and confidential terms with Scheimer. That he was his partner in business, and acquainted with his confidential and private transactions, and wrote all his English letters for him. He states that Scheimer received a letter from the complainant, written in New York, when on his way to Scotland, stating that his sister would assist him to money " to amount that will save the property," and requesting to be informed " what kind of money will be required to satisfy the demand." To this letter, Smith tells us that he " replied in the name of Schiemer, stating that any money current in Scotland would be current here, and informing of his family's health. Nothing more."

This was undoubtedly the letter which Stevens saw, and it is very certain that it was not in Scheimer's hand-writing, although it is very probable that he signed it himself, as we may understand from Smith's testimony.   Under the circumstances, Smith's recollection is much more to be relied upon than Stevens', as to the contents of this letter.     Smith wrote the letter, and was familiar with the subject to which the correspondence related, and he states that Scheimer never at any time told him that he had any agreement with the complainant that he should have a right to redeem the land, and there can be no doubt that had the letter contained the clause which Stevens thinks it did, that Smith must have recollected it.     The letter, as written, may raise the presumption that Scheimer was disposed or willing to let the complainant have the land, by his refunding the money, or satisfying the claim, but it does not show that an agreement subsisted between them that he should have the right to do so.   Laying out of question the want of any consideration to support such an agreement, we cannot hesitate to say, that there is no such written evidence of the agreement alleged in the bill, as will take it out of the statute of frauds.

The decree of the circuit court dismissing the bill, must be affirmed.

*Decree affirmed.*